PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

DEBORAH DONOVAN,
                    *Plaintiff-Appellee,*

v.

EATON CORPORATION, Long Term
Disability Plan,
                    *Defendant-Appellant.*

⎱ No. 05-2243

Appeal from the United States District Court
for the District of South Carolina, at Greenville.
Henry M. Herlong, Jr., District Judge.
(CA-05-217-HMH)

Argued: May 22, 2006

Decided: September 5, 2006

Before WIDENER and MICHAEL, Circuit Judges, and
Joseph R. GOODWIN, United States District Judge for the
Southern District of West Virginia, sitting by designation.

Affirmed by published opinion. Judge Widener wrote the opinion, in
which Judge Michael and Judge Goodwin concurred.

## COUNSEL

**ARGUED:** Jeffrey David Zimon, BENESCH, FRIEDLANDER,
COPLAN & ARONOFF, L.L.P., Cleveland, Ohio, for Appellant.
Robert Edward Hoskins, FOSTER LAW FIRM, L.L.P., Greenville,
South Carolina, for Appellee. **ON BRIEF:** Anna K. Raske, Tamara

L. Karel, BENESCH, FRIEDLANDER, COPLAN & ARONOFF, L.L.P., Cleveland, Ohio, for Appellant.

**OPINION**

WIDENER, Circuit Judge:

Eaton Corporation appeals the district court's order reversing its decision to deny Deborah Donovan long term disability benefits under an ERISA plan pursuant to 29 U.S.C. § 1132(a)(1)(B). The issue before this court is whether Eaton, which makes its own ERISA decisions, made a reasonable decision to deny Ms. Donovan's claim. Because we find Eaton did not act reasonably in denying Ms. Donovan long term disability benefits, we affirm.

I.

Ms. Donovan worked for Eaton Corporation ("Eaton") in Greenville, South Carolina, as an in-put shaft operator. In 1993, Ms. Donovan quit working because of degenerative disc disease and chronic back pain. At that time she filed a claim for long term disability ("LTD") benefits, and the Eaton Corporation Long Term Disability Plan ("the Plan") paid her LTD benefits for a period of ten years. The Plan is self-insured and administered by Eaton. Broadspire Services, Inc., ("Broadspire") is the Plan's claims administrator and was hired by Eaton to process and review disability claims and decide initial appeals of the denial of disability benefits.

Broadspire periodically reviews a claimant's entitlement to benefits. In February 2004, Broadspire reviewed and denied Ms. Donovan's claim for disability benefits, alleging that there was "insufficient objective clinical documented [evidence] to support a level of functional impairment that would render [Ms. Donovan] unable to perform any occupation."

The relevant Plan language reads as follows:

You are considered to have a covered disability . . . under the Plan if:

. . .

- During the continuation of such total disability following the first 24 months, you are totally and continuously unable to engage in any occupation or perform any work for compensation or profit for which you are, or may become, reasonably well fitted by reason of education, training or experience—at Eaton Corporation or elsewhere.

Prior to the review and denial, Ms. Donovan submitted a June 15, 2003, statement of her treating physician, Dr. Larry Smith, which indicated that she had low back pain and leg pain and was disabled. Ms. Donovan also provided evidence that she was approved for Social Security disability benefits and submitted her own statement noting that she had undergone four back surgeries to repair herniated disks.

Broadspire reviewed Ms. Donovan's medical records and concluded that her condition had improved. It relied on Dr. Smith's medical records dated May 3, 2000, December 27, 2001, April 16, 2002, August 6, 2002, and July 24, 2003, indicating that Ms. Donovan was doing well, was improving, and had no significant complaints or problems. Further, Ms. Donovan stated in Eaton's long term disability questionnaire dated March 28, 2001, that she was able to bathe, walk, and dress herself. On June 12, 2003, she stated in a resource questionnaire that she was able to perform back exercises and drive to the store and the doctor's office. Finally, Ms. Donovan underwent a functional capacity evaluation in December 2003, which suggested that she could perform light work for eight hours a day.

Dr. Tamara Bowman, a Broadspire in-house peer reviewer specializing in internal medicine, reviewed Dr. Smith's records from April 2002 to September 2003, the resource questionnaire, and Dr. Smith's July 15, 2003, statement. In her review dated December 10, 2003, Dr. Bowman concluded that there were insufficient objective clinical findings to support the conclusion that Ms. Donovan was unable to perform any occupation. Specifically, Dr. Bowman found that "although the claimant is noted to have low back and leg pain, there was no documentation of objective muscle weakness, signs of radiculo-

pathy, abnormal gait-joint deformity or effusion or synovitis." She also found that there was "no documentation of any radiographic abnormalities, and no evidence of a herniated disc or spinal canal stenosis." Broadspire issued a denial letter on February 10, 2004, and indicated that, based on an employability assessment report, Ms. Donovan could work as a claims clerk, waitress, and counter attendant in a cafeteria.

On April 30, 2004, Ms. Donovan requested an appeal of her claim. She supplemented her file with medical records from Dr. John A. Welshofer of Total Spine Specialists dated March 4, 2004, indicating that examination and x-rays of her lumbar spine revealed that she suffered from "probable chronic permanent lumbar radiculopathy, severe lumbar degenerative disc disease status post surgery x4, [and] cervical degenerative disc disease." Further, she provided a statement dated April 8, 2004, from Dr. Welshofer that there was "objective evidence of chronic radiculopathy on electrodiagnostic testing." Dr. Welshofer further stated that Ms. Donovan could not lift, pull, push or carry more than 10 pounds, could perform occasional bending, could perform "[n]o stooping, squatting, kneeling or repetitive motion about the lumbar spine," could only stand, sit or walk for 15 or 20 minutes at a time without changing positions or resting, and that she would require intermittent leaves of absences from work for physical therapy and steroid injections. In sum, Dr. Welshofer concluded that Ms. Donovan could only perform a sedentary occupation with the above-listed limitations.

Dr. Martin Mendelssohn, another Broadspire in-house peer reviewer specializing in orthopedic surgery, concluded in his review on May 28, 2004, that Ms. Donovan was not precluded "from performing any occupation effective 03/01/04 provided it is sedentary in nature with restrictions as outlined by her treating physician." Dr. Mendelssohn found that there was no evidence of peripheral neuropathy or other nerve damage. As such, on June 3, 2004, Broadspire again denied Ms. Donovan's claim on appeal, concluding that there was insufficient objective medical evidence to support a finding that Ms. Donovan was entitled to LTD benefits.

On June 21, 2004, Ms. Donovan filed a second appeal. She submitted an affidavit outlining her subjective complaints about her daily

activities. Further, Ms. Donovan challenged Broadspire's functional capacity evaluation, which concluded that she was able to work eight hours a day, contending that the evaluation only lasted several hours, and she was unable to do anything the next day because she was sore. As such, she alleged, the evaluation only established that she could perform certain tasks on a good day.

Ms. Donovan also provided an electrodiagnostic report dated July 22, 2004, indicating that she suffered from "mild to moderate [right] median nerve entrapment at the wrist and mild R C6 radiculopathy." Further, she submitted July 2004 radiology reports, as well as Dr. Welshofer's notes indicating that she had radiating symptoms down her arm and paresthesias. The July 13, 2004, MRI of Ms. Donovan's cervical spine found "moderate to marked degenerative changes of the cervical spine most prevalent at C5-6 resulting in mild spinal cord compression." As a result of the July 2004 findings, Dr. Welshofer referred Ms. Donovan to a surgeon, Dr. Robert E. Lins, for evaluation on July 22, 2004. In addition to Dr. Welshofer's notes, Ms. Donovan submitted Dr. Lins' notes indicating that her MRI of July 13, 2004, found marked spinal canal stenosis at C5-C6.

On August 17, 2004, Ms. Donovan submitted Dr. Welshofer's affidavit in which he opined that, as a result of her condition, Ms. Donovan has been totally disabled since 1993 and could not perform any job on a full-time basis. Moreover, Dr. Welshofer declared that the functional capacity evaluation was not "an accurate indicator of [Donovan's] ability to work on a consistent basis or her disability."

Dr. James Wallquist, a third Broadspire in-house peer reviewer specializing in orthopedic surgery, concluded in a review dated August 30, 2004, that residual cervical and lumbar radiculopathy were not sufficient objective findings to support the conclusion that Ms. Donovan could not perform any occupation in light of the functional capacity evaluation and Dr. Welshofer's April 2004 statement. Dr. Wallquist noted in his review that Dr. Smith did not perform a neurological exam, and that Ms. Donovan's pain was not quantified. In addition, Dr. Wallquist stated that Dr. Smith's notes were silent regarding any "spasm or gait analysis or tension signs."

On September 24, 2004, Ms. Donovan underwent "C4-C5 and C5-C6 anterior cervical diskectomies and foraminotomies, placement of

interbody device at C4-C5 and C5-C6 with Cornerstone allograft and anterior cervical plating . . . at C4-C5 and C5-C6." Dr. Wallquist's final conclusion after reviewing the medical records concerning Ms. Donovan's surgery was that "the documentation would not support a functional impairment that would preclude this claimant from engaging in any occupation from 3/01/04 through 9/22/04 prior to cervical surgery. The documentation would support impairment from any occupation, from 9/23/04 through the present, while recovering from cervical surgery."

An independent orthopedic surgeon who reviewed Ms. Donovan's records for Broadspire found in a December 20, 2004, report that there was no evidence that Ms. Donovan could not perform any occupation as of March 1, 2004, when the denial of her disability benefits was effective. Thus, Broadspire denied Ms. Donovan's second appeal and issued a final denial letter on January 11, 2005. Litigation in the district court ensued.

The district court found that Eaton's decision to deny Ms. Donovan LTD benefits was unreasonable. Further, the district court found, in light of Dr. Welshofer's affidavit and the medical evidence from July to September 2004, Eaton's decision was not supported by substantial evidence in the record. Thus, the district court found that Eaton abused its discretion in denying Donovan LTD benefits. The district court reversed the denial of LTD benefits and ordered the Plan to pay LTD benefits to Ms. Donovan. This appeal by Eaton followed.

II.

A.

Following an established framework for reviewing the denial of disability benefits, we review the district court's decision de novo. *Feder v. Paul Revere Life Ins. Co.*, 228 F.3d 518, 522 (4th Cir. 2000); *Ellis v. Metropolitan Life Ins. Co.*, 126 F.3d 228, 232 (4th Cir. 1997). A reviewing court must initially decide de novo whether the ERISA plan's language grants the plan administrator discretion to determine the claimant's eligibility for benefits, and if so, whether the administrator acted within the scope of that discretion. See *Haley v. Paul Revere Life Ins. Co.*, 77 F.3d 84, 89 (4th Cir. 1996). If the reviewing

court determines that the language of the plan confers discretion on the administrator to determine eligibility, then a court reviews the decision to deny benefits for abuse of discretion. See *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 111 (1989); *Ellis*, 126 F.3d at 232. This deferential standard of review requires that a reviewing court not disturb an administrator's decision if it is reasonable, even if the court would have reached a different decision. See *Bruch*, 489 U.S. at 115; *Haley*, 77 F.3d at 89.

We will find discretionary authority in the administrator if the plan's language expressly creates discretionary authority, such as in this case. The Plan provides Eaton, as the Plan Administrator, shall have "sole authority to control and manage the operation and administration of the Plan," as well as the "sole and absolute authority and responsibility for construing and interpreting the provisions of the Plan." Accordingly, we may not disturb a long term disability determination made by Eaton in its capacity as Plan Administrator so long as its decision is reasonable. If, however, a coverage decision is unreasonable, then Eaton has abused its discretion, and such an abuse warrants reversal of an affected coverage determination. See *Booth v. Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan*, 201 F.3d 335, 342 (4th Cir. 2000); *Feder*, 228 F.3d 522.

The parties do not dispute and the district court so found that the Plan confers discretion upon the Administrator. The Plan argues, however, that the district court decided this case without the benefit of *Colucci v. AGFA Corp. Severance Pay Plan*, 431 F.3d 170 (4th Cir. 2005). In *Colucci*, this court determined that a conflict of interest, in which a plan's administrator is also its funder, should not cause the court to reduce deference to the administrator. The Plan contends that the district court incorrectly applied a modified abuse of discretion standard and encourages us to review independently of the district court's findings. *Bynum v. Cigna Healthcare of North Carolina, Inc.*, 287 F.3d 305, 312 (4th Cir. 2002). Conceding that a conflict of interest should not be a factor in reducing deference in light of *Colucci*, Ms. Donovan argues first that it is unclear whether or not the district court reduced deference. Second, and more importantly, Ms. Donovan contends, the issue in this case is whether the Plan's denial of benefits to Ms. Donovan was supported by substantial evidence in the record.

She argues it was not; thus, the Plan's decision was unreasonable and an abuse of discretion. We agree.

B.

Ms. Donovan stopped working in 1993 because of degenerative disc disease and chronic back pain. The Plan paid her LTD benefits for ten years. She was awarded Social Security disability benefits in August 1994 for impairments considered to be "severe" under the Social Security Act and Regulations: three failed back surgeries and chronic back and leg pain.

Finding "insufficient documentation of a functional impairment that would preclude [her] from the job duties of any occupation," Broadspire denied Ms. Donovan's entitlement to benefits in February 2004. Broadspire acknowledged Dr. Smith's Attending Physician's Statement of June 2003 indicating Ms. Donovan had low back pain and leg pain and that she is disabled, but pointed out that Dr. Smith did not note any objective findings. Broadspire also noted Ms. Donovan's history of failed back surgery on three occasions. Relying on the peer reviewer's opinion, the Functional Capacity Evaluation, an Employability Assessment, and a labor market survey, Broadspire stated that there were numerous positions "in keeping with [her] physical capacity, and numerous positions . . . available in the labor market in [her] area."

Dr. Bowman, in-house peer reviewer, emphasized the lack of objective findings in Ms. Donovan's medical records, stating:

> In the submitted records, although the claimant is noted to have low back pain and leg pain, there is no documentation of objective muscle weakness, signs of radiculopathy, abnormal gait, joint deformity or effusion, or synovitis. There is no documentation of any radiographic abnormalities, and no evidence of a herniated disc or spinal canal stenosis.

Dr. Bowman also referenced Ms. Donovan's answers on a Resource Questionnaire dated June 12, 2003, noting:

she is able to cook, do shopping, do laundry, and clean the dishes, on a regular basis. She is able to perform all of her activities of daily living, and she still drives. These capacities are compatible of performance of a sedentary or light level of work.

This recitation of the evidence ignores Ms. Donovan's statements that she suffers from "chronic pain in [her] neck, back, and legs." In her affidavit she states she is also plagued by "profound fatigue" and she has "difficulty sleeping" which "also contributes to [her] severe fatigue." Moreover, Ms. Donovan states that she "cannot sit, stand, or walk for any period of time without having to change positions because of the severe pain" in her neck, back and legs. She also submits that the results of the Functional Capacity Evaluation do not reflect her ability to work. After the test was administered, Ms. Donovan was "still sore the next day and [she] did nothing the next day." She states that the evaluation "measured what [she] could do for the very brief window of time that [she] was present with the evaluator."

Further, the peer reviewer disregarded Ms. Donovan's qualification of her activities on the Resource Questionnaire. Ms. Donovan said she does daily back exercises; she has difficulty sleeping because of pain and numbness; and, she only drives to the drug store, grocery store, and doctor. Also, she does not climb stairs, dust, vacuum, or garden on a regular basis. Based on the evidence as a whole, it was unreasonable for the Plan to deny benefits to Ms. Donovan.

Subsequently in May 2004, Dr. Mendelssohn, a second in-house peer reviewer, made similar determinations, concluding "the documentation does not reveal a functional impairment that would preclude the claimant from performing any occupation effective 03/01/04 provided it is sedentary in nature with restrictions as outlined by her treating physician." Dr. Mendelssohn's determinations, as well as the determinations of a third peer reviewer, Dr. Wallquist, were based primarily on an evaluation done by Dr. Welshofer at Total Spine Specialists on March 4, 2004. Dr. Mendelssohn noted that Dr. Welshofer "did not feel any additional surgical intervention would be warranted and felt that the claimant would be able to function within a sedentary capacity." Dr. Welshofer's opinion of Ms. Donovan is a source of

controversy in this case because he changed his position in an affidavit dated August 17, 2004.*

Dr. Wallquist was called upon again in November 2004 to review Ms. Donovan's case. He acknowledged Dr. Welshofer "concluded that he did not feel the claimant could perform in any type of sedentary job on a full-time and consistent bases." Dr. Wallquist goes on, however, to say, "[t]here were no updated quantitative objective physical findings referenced in that affidavit to support a change in position from 4/08/04 to the time of the affidavit of 8/17/04 to support his conclusions."

Ms. Donovan's July 2004 radiology reports revealed that she had stenosis, spinal cord compression, right median nerve entrapment in her wrist, and R C6 radiculopathy. This discovery in July of cervical back problems, in addition to Ms. Donovan's severe low back problems, lends substantially greater weight to Dr. Welshofer's affidavit in August 2004 than his April 2004 statement. Moreover, Dr. Welshofer's change of opinion would be entirely consistent with a worsening condition, from which Ms. Donovan suffered to the point of surgery on September 23, 2004. In his affidavit, Dr. Welshofer states,

> The nature of Ms. Donovan's problems are such that she has good days and bad days. On a good day Ms. Donovan can

---

*The Plan makes much of Dr. Welshofer's notes from April 8, 2004, in which he states that Ms. Donovan could perform sedentary work with certain limitations. The Plan fails to address Dr. Welshofer's entire statement, in which he says, "I certainly don't feel that the patient will qualify for any light, medium or heavy duty occupation. It would have to be an occupation within the sedentary level as mentioned above with the aforementioned accommodations." The restrictions included:

> (1) The patient should [not] lift, pull, push or carry greater than 10 pounds; (2) Only occasional bending; (3) No stooping, squatting, kneeling or repetitive motion about the lumbar spine; (4) No prolonged sitting, standing or walking for more than 15 or 20 minutes at a time without a change in positions or rest; (5) The patient, based upon Americans with Disabilities Act may require intermittent leaves of absences for treatment to include: either physical therapy and possible epidural steroid injections.

perform as [she] did during the Functional Capacity Evaluation. However, if she does exert herself to that extent then it is likely that [she] will need several days of complete inactivity to recover. Additionally, the Functional Capacity Evaluation does not accurately measure or evaluate the type of fatigue which is frequent and severe with persons suffering from Ms. Donovan's conditions.

The Functional Capacity Evaluation, in Dr. Welshofer's words, "is not an accurate indicator of her ability to work on a consistent basis or her disability." He also opined that her condition may become worse as she ages. Further, Dr. Welshofer stated, "Ms. Donovan's problems do consist of real medical conditions and subjective symptoms caused thereby. The nature of those problems are such that it is not reasonable to expect that a person suffering from Ms. Donovan's conditions could be able to work on a full-time consistent, or continuous basis at any occupation." Dr. Welshofer concludes:

It is my opinion, based upon my medical education and experience and based upon my specific knowledge of Ms. Donovan's problems and treatment history that she is and has been completely and totally disabled from performing any job on a full-time basis, consistent with the definition of disability above and consistent with my knowledge of Ms. Donovan's training, education, and experience.

The district court found that the Plan's wholesale disregard of Dr. Welshofer's affidavit in favor of his earlier April 2004 statement, which was based on incomplete information, was unreasonable. We agree. Dr. Welshofer's affidavit is further supported by Dr. Lins' office notes in August 2004 that Ms. Donovan's neck and right arm pain had been getting worse over the previous six months but that the pain had been present for the last three years. In light of this evidence, Ms. Donovan is entitled to LTD benefits from March 2004 to September 2004.

III.

Thus, Eaton's decision to deny Ms. Donovan long term disability benefits is not supported by substantial evidence in the record. We are

of opinion that Eaton abused its discretion in denying benefits. Accordingly, we affirm the judgment of the district court.

*AFFIRMED*