**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 07-1377**

---

BYRON D. SMITH,

        Plaintiff - Appellee,

    v.

METROPOLITAN LIFE INSURANCE COMPANY,

        Defendant - Appellant.

---

**No. 07-1378**

---

BYRON D. SMITH,

        Plaintiff - Appellant,

    v.

METROPOLITAN LIFE INSURANCE COMPANY,

        Defendant - Appellee.

---

**No. 07-1645**

---

BYRON D. SMITH,

        Plaintiff - Appellee,

    v.

METROPOLITAN LIFE INSURANCE COMPANY,

Defendant - Appellant.

---

Appeals from the United States District Court for the Eastern District of North Carolina, at Raleigh. Malcolm J. Howard, Senior District Judge. (5:05-cv-00633)

---

Argued: March 20, 2008                     Decided: April 17, 2008

---

Before WILKINSON and KING, Circuit Judges, and C. Arlen BEAM, Senior Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

---

Affirmed and remanded with instructions by unpublished per curiam opinion.

---

**ARGUED:** Stephen Alan Dunn, EMANUEL & DUNN, P.L.L.C., Raleigh, North Carolina, for Metropolitan Life Insurance Company. Mark Stanton Thomas, WILLIAMS MULLEN, Raleigh, North Carolina, for Byron D. Smith. **ON BRIEF:** Robert W. Shaw, WILLIAMS MULLEN, Raleigh, North Carolina, for Byron D. Smith.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Metropolitan Life (Met Life) appeals from a grant of summary judgment in favor of Byron D. Smith on his claim that Met Life improperly terminated his long-term disability benefits in violation of the Employee Retirement Income Security Act of 1974 (ERISA). Met Life also appeals an award of attorney fees in Smith's favor. Smith cross-appeals, asking that we amend a clerical error in the district court's order, or remand to the district court so it may do so. After reviewing the record, we agree with the district court that Met Life abused its discretion by terminating Smith's benefits. We therefore affirm the district court's rulings in Smith's favor, but remand to the district court so that it may amend the clerical error in its original order.

I.

Smith, a loan officer with CitiFinancial, sustained a gunshot wound to his left eye in April 1988. Smith suffered a detached retina and had corrective surgery later that same year. One year later, Smith suffered a stroke that left him with abnormal visual fields in both eyes and a pronounced weakness on his left side. Smith returned to work as a loan officer in July 1989. Over the next fourteen years, Smith had cataract removal and lens implantation surgeries, and suffered from weakness on his left side. Nonetheless, Smith continued to work as a loan officer and

was eventually promoted to assistant manager. In these capacities, Smith had to produce and review lengthy, detailed loan documents, perform computer work, do mathematical calculations, and drive to real estate sites, the post office and the bank.

In late 2003, Smith's vision began to deteriorate rapidly and he became legally blind in his left eye by December 2003. Smith's job performance also declined, as he could no longer concentrate on the long loan documents or perform the required arithmetic calculations. CitiFinancial warned Smith he would be fired if he continued to make errors in his work.

As a result of these medical problems, Smith stopped actively working for CitiFinancial on February 26, 2004, at the age of forty-seven, and sought short-term disability (STD) benefits through CitiFinancial's disability plan. Met Life administers the plan, which is funded through premiums paid to Met Life. Met Life also has discretionary authority to determine entitlement to benefits. On March 2, 2004, Smith's physician, Dr. Richard Burdick, notified Met Life that Smith could not work because he had "visual field cuts" and "left foot lag/drag," which caused falls. Met Life contacted Smith, and he reported that he was having severe visual and memory problems and increasing difficulty getting around. Met Life approved Smith's STD claim, and requested medical confirmation from Dr. Burdick. On March 14, 2004, Dr. Burdick sent Met Life office notes from his examination of Smith on February 26,

4

2004.  Dr. Burdick also sent a letter advising Met Life that he did not expect Smith to return to work, as Smith's vision problems rendered him unable to read or to perform the mathematical calculations "that are an integral part of his job."

In April 2004, Smith underwent surgery to repair a detached retina.  The day after Smith's surgery, Dr. Van Houten, Smith's surgeon and a retina specialist, advised Met Life that Smith could not return to work until his "retina is stable."  On May 21, 2004, Dr. Van Houten sent Met Life a Supplemental Attending Physician Statement, stating that, as of May 7, 2004, Smith's eye had not yet healed from surgery.  Dr. Van Houten did not advise when Smith could return to work, but informed Met Life in a follow-up phone call that Smith needed to lie on his side continuously for at least eight more weeks until his eye healed.

Based on this information, Met Life approved Smith's claim through June 30, 2004, extending STD benefits through the maximum period of May 26, 2004, and awarding long-term disability (LTD) benefits from May 27, 2004, to June 30, 2004.  Met Life subsequently extended LTD benefits through July 8, 2004, the date of Smith's next appointment with Dr. Van Houten.

On June 18, 2004, Met Life received an LTD claim packet from Smith.  Smith reported that he could not return to work due to his vision problems and chronic weakness on his left side.  He also noted that he had not driven since his surgery.  On June 20, Dr.

5

Burdick completed a Supplemental Attending Physician Statement indicating that, as of Smith's last exam, he was unable to work due to his vision problems. Met Life then requested more information on the status of Smith's condition from Dr. Van Houten. After Smith's July 8, 2004, follow-up visit, Dr. Van Houten reported that Smith's retina had healed from surgery, but that he still had abnormal visual fields and, with correction, only 20/200 vision in his left eye. Dr. Van Houten's report did not indicate any change in his initial assessment that Smith could not return to work.

In a letter dated July 13, 2004, Met Life terminated Smith's LTD benefits effective July 14, 2004, finding that his retina had healed and that he had no other medical conditions that prevented him from performing his job duties as an assistant manager. Smith appealed, indicating that his vision problems rendered him unable to drive or to decipher forms and documents at work. In support of his appeal, Smith submitted an updated Attending Physician Statement from Dr. Burdick dated August 8, 2004, indicating that, as of July 15, 2004, Smith could not work because he could not concentrate or perform the required mathematical calculations. Smith also submitted a statement from Dr. Hoke Bullard of the North Carolina Department of Health and Human Services, Disability Determination Services. Dr. Bullard examined Smith on April 14, 2004, and concluded he could not continue working as a loan officer due to severe vision problems, which Bullard found included, among

6

other things, left homonymous hemianopsia.[1]  Finally, Smith submitted a statement from Dr. Lee Clark, also of the Disability Determination Services, stating that Smith's corrected vision in his left eye was only 20/200 and that he probably had homonymous hemianopsia.

Met Life referred Smith's file and appeal to Dr. Jane St. Clair of the American Academy of Disability Evaluating Physicians. Dr. St. Clair, who is certified in Occupational Medicine, reviewed the information in Smith's file and unsuccessfully tried to contact several of his doctors.  Ultimately, and without ever having spoken to either Smith or to any of his treating physicians, Dr. St. Clair determined that Smith could drive and work using only his right eye, while wearing a patch over his blind left eye if necessary. Based on Dr. St. Clair's recommendation, Met Life upheld its decision to terminate Smith's LTD benefits.

Having exhausted his administrative remedies, Smith filed this action on September 20, 2005, under Section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B), seeking to recover LTD benefits.  On cross-motions for summary judgment, the district court found that Met Life's termination of Smith's benefits was unreasonable and not supported by the record evidence.  Accordingly, the district court

---

[1]Homonymous hemianopsia is defined as "[p]artial or complete loss of vision in one half of the visual field(s) of one or both eyes."   Medical  Dictionary  Online,  http://www.online-medical-dictionary.org (second alteration in original).

7

granted summary judgment to Smith and held that Met Life was liable to Smith for benefits from July 14, 2005,[2] through March 22, 2007, the date of judgment. On June 7, 2007, the court granted Smith's motion for fees and costs. This appeal by Met Life followed.

II.

We review the district court's grant of summary judgment de novo. Donovan v. Eaton Corp., 462 F.3d 321, 326 (4th Cir. 2006). Because the plan language grants Met Life discretionary authority to determine entitlement to benefits, we review Met Life's decision to deny benefits for an abuse of discretion. Id.

Nonetheless, "an administrator is required to use a deliberate, principled reasoning process and to support its decision with substantial evidence." McKoy v. Int'l Paper Co., 488 F.3d 221, 223 (4th Cir. 2007). And our deference to Met Life is tempered by the fact Met Life acted under some conflict of interest. Stup v. UNUM Life Ins. Co., 390 F.3d 301, 307 (4th Cir. 2004). Because Met Life is both the insurer and a fiduciary of the plan, and stands to benefit financially from a denial of benefits to Smith, we lessen our deference to Met Life's discretionary authority to the degree necessary to neutralize any untoward influence resulting from that conflict. See id.

_____

[2]This date is the error Smith seeks to amend in his cross-appeal. Both parties agree that Met Life actually terminated Smith's LTD benefits on July 14, 2004.

8

III.

On appeal, Met Life contends the district court erred in the following ways: (1) by subjecting Met Life's claim decision to de novo review, rather than determining whether its decision was reasonable; (2) by finding Met Life's decision to terminate benefits was unsupported by substantial record evidence; (3) by reinstating benefits through the date of judgment; and (4) by granting Smith's motion for attorney fees. We address each contention in turn.

A.

Met Life first argues the district court did not properly review its decision for an abuse of discretion, and instead subjected its claim decision to de novo review. After reviewing the district court's opinion, however, we are satisfied that the district court applied the correct standard.

In its opinion, the court specifically recognized the applicable standard of review as abuse of discretion, tempered by consideration of Met Life's inherent conflict of interest. Moreover, the district court characterized the evidence Met Life relied upon in terms that reflect the appropriate standard, labeling it "a far cry from the 'substantial evidence' required in the Fourth Circuit." The district court went on to discuss the unreasonableness of Met Life's reliance on Dr. St. Clair's opinion and the dearth of other evidence supportive of its position. Thus,

9

a thorough reading of the opinion reveals that the district court examined Met Life's decision for an abuse of discretion, but simply found the decision unreasonable and unsupported by substantial evidence.

B.

Met Life next contends the district court erred in finding its decision to terminate Smith's LTD benefits was unreasonable and unsupported by substantial evidence. After reviewing the record and the reasoning Met Life used to deny benefits, we affirm the conclusions reached by the district court.

As an initial matter, we reject Met Life's contention that Smith failed to satisfy his initial burden of supplying documented proof of disability. See id. at 308. Indeed, as set forth above, Smith submitted abundant evidence of severe medical conditions that prevent him from working in his field. First, Smith himself indicated he cannot drive, concentrate on the details in documents or perform mathematical calculations because of his poor vision. See Donovan, 462 F.3d at 327 (indicating that an insured's subjective assessment of symptoms is relevant and cannot be totally disregarded by the insurer). Moreover, Smith submitted numerous statements from his treating physicians confirming that his conditions prevent him from working. On March 14, 2004, Dr. Burdick wrote that he did not expect Smith to return to work because of his severe vision problems, and he reiterated that

opinion on June 20, 2004, and August 8, 2004. On April 14, 2004, Dr. Bullard opined that, "I do not think [Smith] would be able to return to his life's work, because of the visual impairment which has occurred due to his stroke, and to the gunshot wound to the periorbital tissues of the left eye." On May 7, 2004, Dr. Van Houten advised that Smith could not currently work in any occupation, and his report from Smith's July 8, 2004, follow-up examination does not indicate a change in that assessment. On this record, we find Smith amply carried his initial burden of supplying documented proof of disability.

Nonetheless, Met Life could still deny benefits if the record also contains substantial evidence that Smith *can* continue to work as a loan officer. See Stup, 390 F.3d at 308. We agree with the district court, however, that the current record cannot reasonably be read to support such a finding. To be sure, "an administrator does not act unreasonably by denying benefits if the record contains conflicting medical reports." Id. (quotation omitted). But "the conflicting evidence on which the administrator relies in denying coverage must be 'substantial'–especially when . . . the administrator has an economic incentive to deny benefits." Id. In this case, Met Life relies on three pieces of evidence as supportive of its decision to terminate Smith's benefits: (1) a statement in Dr. Clark's report that Smith's vision fields are "normal;" (2) Dr. Clark's inability to definitively diagnose

11

homonymous hemianopsia; and (3) Dr. St. Clair's finding that Smith can adequately perform his loan officer duties because he has 20/20 vision in his right eye.  We conclude that this evidence is neither substantial nor, in some cases, even supportive of Met Life's position.

First, Dr. Clark's statement that Smith's vision fields are normal was surely a clerical error.  The full sentence reads, "His visual fields are normal, that probably represent[s] a homon[y]mous hemianopsia."  As homonymous hemianopsia is defined as blindness or defective vision in the right or left halves of the visual fields of one or both eyes, Dr. Clark surely intended to say Smith's visual fields are "*ab*normal."  And, indeed, Met Life might have suspected as much, since Dr. St. Clair specifically noted in her own report that Smith's "vision fields are *ab*normal, but this homonymous hemianopsia is not a new finding for him."  Thus, we reject Met Life's contention that this statement, which is taken wholly out of context and is ambiguous at best, constitutes substantial evidence supporting its claim decision.  <u>Myers v. Hercules, Inc.</u>, 253 F.3d 761, 768 (4th Cir. 2001)(finding administrator could not rely on bits and pieces of evidence taken out of context as substantial evidence supporting termination of benefits).

We also reject Met Life's reliance on the fact that Dr. Clark could not definitively diagnose homonymous hemianopsia.  We think

12

it is fair to characterize Dr. Clark's report as somewhat equivocal on the subject of whether Smith actually suffers from that condition. That characterization does not make the report particularly helpful to Met Life because we have previously recognized that "[a]n equivocal opinion . . . simply does not provide 'substantial evidence.'" Stup, 390 F.3d at 310.

Finally, we find Met Life's reliance on the determination of Dr. St. Clair-who neither examined Smith nor spoke to him or to any of his treating physicians-unreasonable. "To be sure, ERISA does not impose a treating physician rule, under which a plan must credit the conclusions of those who examined or treated a patient over the conclusions of those who did not." White v. Sun Life Assurance Co., 488 F.3d 240, 254 (4th Cir.), cert. denied, 128 S. Ct. 619 (2007). Nonetheless, an insurer must present "a basis a reasoning mind would accept as sufficient to support its decision." Id. (quotation omitted). And here, we find such a basis lacking. Dr. St. Clair's report notes that Smith is legally blind in his left eye, has severely reduced peripheral vision in both eyes and has balance problems due to his poor peripheral vision. She nonetheless concludes, without explanation, that he would have adjusted to his reduced visual fields years ago and that he can adequately drive and work with one eye, while wearing a patch over his blind left eye if necessary. We agree with the district court that, in light of the objective medical evidence, these conclusions

13

are, at best, difficult to believe. What is more, they are belied by uncontradicted facts in the record. For example, it is undisputed that, after Smith became blind in his left eye, CitiFinancial threatened to fire him for making errors resulting from his poor vision. This fact totally undermines Dr. St. Clair's conclusion that Smith can adequately perform his duties with monocular vision.

In sum, after reviewing the record, we find that the evidence relied upon by Met Life in support of its decision falls far short of the substantial evidence required by our precedent. Accordingly, Met Life abused its discretion by terminating Smith's LTD benefits and the grant of summary judgment in Smith's favor is affirmed.

C.

Met Life also contends the district court erred by reinstating Smith's LTD benefits through the date of its judgment. Under the terms of the plan, Smith is entitled to LTD benefits for an initial twenty-four-month period if he is unable to earn more than eighty percent of his predisability earnings at his "Own Occupation" for any employer in the local economy. After that initial period, Smith is only entitled to continue receiving LTD benefits if he is unable to earn more than sixty percent of his predisability earnings at "Any Gainful Occupation" commensurate with his training and experience.

14

Here, Smith began receiving LTD benefits on May 27, 2004, so the twenty-four-month "Own Occupation" period commenced on that date and ended on May 27, 2006.  Thus, when the district court rendered its decision on March 22, 2007, and reinstated Smith's benefits through the date of judgment, it extended LTD benefits under both the "Own Occupation" *and* the "Any Gainful Occupation" standards. And, Met Life claims the district court erred by doing so, because Smith never submitted, and Met Life never considered, a claim for benefits under the "Any Gainful Occupation" standard.  Thus, Met Life says Smith has not exhausted his administrative remedies with respect to benefits under that standard, and there was neither an administrative record nor an administrative decision for the court to review.

We disagree.  First, to the extent Met Life contends Smith has not exhausted his administrative remedies under the "Any Gainful Occupation" standard, Met Life has pointed to nothing in the record indicating Smith bore the burden of coming forward on his own initiative, and without a request from Met Life, with additional evidence of his inability to work at any gainful occupation once the "Own Occupation" period ended.[3]  And we can understand why Smith might have thought it futile to do so: Met Life had already

_____

[3]In fact, the only applicable language in the record suggests otherwise.  The initial letter Met Life sent to Smith approving his LTD claim from May 27, 2004, through June 30, 2004, states that "[Met Life] will periodically require updated medical information and will contact you and/or your physician."

15

explained to Smith on several occasions that he could perform his *own* occupation. This determination "necessarily precluded [Smith] from arguing with a straight face to the same insurance company that he was unable to perform . . . *any* occupation." Dozier v. Sun Life Assurance Co., 466 F.3d 532, 535 (6th Cir. 2006). See also Paese v. Hartford Life Accident Ins. Co., 449 F.3d 435, 449 (2d Cir. 2006)(noting that plan's decision that insured was not disabled from his own occupation "necessarily implies a decision that he was not totally disabled from 'any occupation'"). Moreover, we think the current record supports the district court's determination. When the district court rendered its opinion, Smith, a then-fifty-year-old man who had spent the last fourteen years of his career doing work that requires visual acuity and attention to minute details, was legally blind in one eye, had severely reduced peripheral vision in the other eye, and was unable to drive. On these facts, we think it self-evident that Smith could not, as of March 22, 2007, return to either his own occupation or to any other occupation commensurate with his training and experience. Accordingly, we affirm the award of LTD benefits through the date of judgment.[4]

D.

Finally, Met Life challenges the district court's discretionary award of attorney fees to Smith. See Quesinberry v. Life Ins. Co.,

---

[4]Nothing in this opinion should be construed as precluding Met Life from requesting proof of Smith's continuing inability to work at any gainful occupation at any future date.

16

987 F.2d 1017, 1029 (4th Cir. 1993) (en banc).  We review an attorney fee award for abuse of discretion, and review the findings of fact underlying that award for clear error.  Carolina Care Plan, Inc. v. McKenzie, 467 F.3d 383, 390 (4th Cir. 2006).  In this case, having reviewed the record and considered the arguments advanced by the parties, we find that the district court acted within its discretion.

IV.

Smith cross-appeals, seeking to amend a clerical error in the district court's judgment.  In its March 22, 2007, order, the district court held that Met Life was liable to Smith for benefits under the plan from July 14, 2005, through the date of judgment. It is undisputed, however, that Met Life terminated Smith's LTD benefits as of July 14, *2004*.  As a result, we remand to the district court with directions to amend its order to reflect that Smith's benefits are reinstated as of that date.

AFFIRMED AND
REMANDED WITH INSTRUCTIONS