**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 09-1248

THOMAS F. PIEPENHAGEN,

Plaintiff - Appellant,

v.

OLD DOMINION FREIGHT LINE, INC., Employee Benefit Plan,

Defendant - Appellee.

Appeal from the United States District Court for the Western District of Virginia, at Roanoke.  James C. Turk, Senior District Judge.  (7:08-cv-00236-jct)

Argued:  March 24, 2010                Decided:  September 16, 2010

Before MICHAEL and DAVIS, Circuit Judges, and Eugene E. SILER, Jr., Senior Circuit Judge of the United States Court of Appeals for the Sixth Circuit, sitting by designation.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Richard F. Hawkins, III, HAWKINS LAW FIRM, Richmond, Virginia, for Appellant.  Monica Taylor Monday, GENTRY, LOCKE, RAKES & MOORE, Roanoke, Virginia, for Appellee.  **ON BRIEF:** Michael A. Cleary, Roanoke, Virginia, for Appellant.  Eunice Park Austin, W. David Paxton, GENTRY, LOCKE, RAKES & MOORE, Roanoke, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

This appeal arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, et seq. Upon its consideration of cross-motions for summary judgment, the district court sustained the denial of long term disability benefits to Thomas F. Piepenhagen ("Appellant"), a former truck driver, by the Old Dominion Freight Line, Inc., Employee Benefit Plan ("the Plan" or "Appellee"). On appeal, Appellant contends that the district court erred in concluding that Appellee's denial of benefits was consonant with the dictates of ERISA. We discern no error in the district court's review of Appellant's contentions and therefore we affirm.

I.

On February 8, 2005, Appellant suffered a heart attack while operating a tractor-trailer rig. Immediately thereafter, he was hospitalized and underwent medical treatment. Appellant never returned to work as a truck driver. Over the next two years, Appellant made regular visits with his primary care physician, Dr. Vashist Nobbee, and his cardiologist, Dr. Andrew J. Maiolo, who undertook responsibility for management of Appellant's cardiac condition. Virtually all of the material in the administrative record of Appellant's claim consists of reports and records generated by those two physicians.

2

In October 2005, the Social Security Administration awarded Appellant benefits ("SSA award") based on its determination that he was totally disabled. (Under the terms of the Plan, Appellant was required to seek Social Security benefits as a precondition to his receipt of long term disability benefits.) In the meantime, Appellee paid short term and "same occupation" long term disability benefits to Appellant from February 2005 through December 2005, when it suspended payments. Appellee based its suspension of payments on its assertion that certain psychological or psychiatric "comorbidities" (which were not covered under the terms of the Plan) were causally related to Appellant's inability to work.

After Appellant exhausted his administrative remedies as required by the Plan he filed suit on or about November 6, 2006, in state court (without mentioning ERISA) seeking restoration of benefits. Appellee removed the case to the federal district court for the Western District of Virginia. In due course, the parties reached a settlement as to Appellant's claim for "same occupation" long term disability benefits. In accordance with the parties' settlement agreement, on April 20, 2007, the district court (1) dismissed with prejudice the claim for "same occupation" benefits; and (2) remanded the claim for "any occupation" benefits to the Plan for plenary review.

In the post-remand administrative proceedings, Appellee determined that Appellant had not carried his burden to show that he was totally disabled under the terms of the Plan. Accordingly, after Appellant had exhausted all administrative remedies available to him under the Plan, he filed suit on or about February 27, 2008, again in state court. The case was removed once again to federal court. The administrative record was lodged with the district court and the parties filed cross-motions for summary judgment. The district court conducted a hearing on the cross-motions on December 4, 2008, and, on February 27, 2009, filed a comprehensive memorandum opinion and order granting Appellee's motion for summary judgment, denying Appellant's motion for summary judgment, and entering judgment in favor of Appellee. Piepenhagen v. Old Dominion Freight Line, Inc. Employee Benefit Plan, 640 F.Supp.2d 778 (W.D.Va. 2009).

Appellant filed this timely appeal from the judgment of the district court.

II.

We begin with a summary of some of the evidence in the record bearing on Appellant's course of treatment and prognosis after his heart attack. In so doing, we bear in mind that (1) no issue is presented in this appeal as to short term disability or "same occupation" long term disability, and (2) psychiatric "co-

4

morbidities" may not, under the circumstances here, bolster Appellant's claim.

On March 3, 2005, within weeks of his cardiac event, Appellant visited Dr. Nobbee, who noted that the Appellant "was doing well" but "will remain off work" until May, when his next doctor's visit was scheduled. Dr. Nobbee also noted that it "may be worthwhile to keep him off work until his cardiac status is fully controlled given his strong risks." On March 9, 2005, Dr. Maiolo examined Appellant and noted that he was "doing reasonably well." Appellant informed Dr. Maiolo that he planned to return to work in July 2005." Dr. Maiolo noted that the Appellant had scheduled a full physical with Dr. Nobbee in July 2005, and that the Appellant "can, at that time, be cleared to return to work."

During Appellant's visit to Dr. Nobbee on May 5, 2005, Appellant was "doing quite well" but showing personality and mood difficulties. On June 16, 2005, Dr. Nobbee completed an Attending Physician's Statement and indicated that Appellant was "totally disabled" for "any occupation" but that he "may be able to return to work in July 2005. During a July 26, 2005 visit, Dr. Nobbee found that Appellant had "recovered well" from his cardiac event but was concerned about Appellant's psychological health. Dr. Nobbee recommended a psychological evaluation prior

to releasing the Appellant to work. During a November 1, 2005 visit, Dr. Nobbee diagnosed Appellant as doing well.

On January 9, 2006, Dr. Nobbee submitted a letter in support of Appellant's "same occupation" long term disability claim, indicating that Appellant has "several comorbidities including advanced coronary artery disease as well as significant symptoms of depression and anxiety related to his medical comorbidities." Dr. Nobbee recommended that permanent disability be awarded Appellant because of "his inability to continue in his present employment as a truck driver." On January 16, 2006, the Plan's agent, ACS Benefit Service ("ACS"), asked Dr. Nobbee to complete another Attending Physician's Statement. In response, on January 30, 2006, Dr. Nobbee indicated that Appellant had impairments based on his cardiac condition and major depressive disorder and hyperlipidemia, which were unimproved. He further noted that Appellant's prognosis was "permanently disabled," adding that Appellant would never return to his "regular occupation."

On September 18, 2006, Dr. Maiolo again evaluated Appellant, and described him as "doing reasonably well." On November 13, 2006, Dr. Nobbee examined Appellant and indicated that he was "doing quite well," had no "active complaints," and that his "[d]epression screen . . . was negative." Dr. Maiolo also assessed Appellant on February 13, 2007, and found that he

6

was "was doing reasonably well." He added that Appellant was experiencing chest discomfort on occasion, but that such discomfort was remedied by medication. Appellant was not suffering from any psychological impairments. On April 24, 2007, Dr. Maiolo completed a Cardiac Residual Functional Capacity Questionnaire ("CRFC"). In it, he indicated that Appellant was "capable of low stress jobs."

The evidence emphasized most heavily by Appellant as demonstrating that he established his entitlement to long term disability benefits is seen in this summary found at page 12 of his opening brief, consisting of counsel's interpretation of Dr. Maiolo's opinions as derived from the CRFC:

> That he was limited to walking no more than two blocks without rest;
>
> That he was limited to occasionally lifting no more than twenty pounds;
>
> That he must avoid even moderate exposure to extreme cold or heat, wetness, humidity, noise, fumes and hazards;
>
> That he could sit no more than forty-five minutes before needing to get up;
>
> That he could stand no more than forty-five minutes before needing to sit down or walk around;
>
> That he would need to take unscheduled breaks during an eight-hour work shift, that such un-scheduled work breaks would occur two to three times per eight-hour work day, and that each rest period would have to be at least twenty minutes; and

7

That he would experience good days and bad days based on his recurring chest pain and that he would miss approximately one day per month as a result of this impairment.

On June 19, 2007, Appellant submitted his remand claim for benefits under the "any occupation" provision of the Plan, supported, in particular, by Dr. Maiolo's CRFC. He also included as a basis for his claim the loss of three fingertips on his right hand resulting from a 1988 accident while working as a machine operator. Appellant asserted that his hand injury made "any writing difficult" and affected his ability to "pick up small objects" and grasp heavy items with any strength.

## III.

In ERISA cases as in others, we review the district court's grant of summary judgment de novo. Ellis v. Metropolitan Life Ins. Co., 126 F.3d 228, 232 (4th Cir. 1997). In doing so, however, where the administrator or fiduciary of an ERISA-covered plan exercises discretionary authority granted by the plan, as is the case here, this court (like the district court) reviews that determination under an abuse of discretion standard. Metropolitan Life Ins. Co. v. Glenn, 128 S. Ct. 2343, 2347-48 (2008) (citing Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 111-13 (1989)); Ellis, 126 F.3d at 232 (collecting cases). Under such a deferential standard of review, this court

will not disturb the administrator or fiduciary's decision if it is reasonable, even if this Court -- assuming, arguendo, that we had initially heard the case -- would have come to a different conclusion. Id. A reasonable decision is one where "the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." Brogan v. Holland, 105 F.3d 158, 161 (4th Cir. 1997) (quotation omitted).

We have recognized that in Glenn, the Supreme Court clarified "that the administrator's conflict of interest did not change the standard of review from the deferential review, normally applied in the review of discretionary decisions, to a de novo review, or some other hybrid standard." Carden v. Aetna Life Ins. Co., 559 F.3d 256, 260 (4th Cir. 2009); see also Champion v. Black & Decker (U.S.) Inc., 550 F.3d 353, 357-59 (4th Cir. 2008). Instead, the abuse of discretion determination is made by weighing the conflict of interest along with "several different, often case-specific, factors." Glenn, 128 S.Ct. at 2351. Our precedents teach that the weight accorded a conflict of interest depends on the plan's language as well as other factors, such as:

> (1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decisionmaking process was reasoned

9

and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have.

Booth v. Wal-Mart Stores, Inc. Associates Health & Welfare Plan, 201 F.3d 335, 342-43 (4th Cir. 2000).


IV.

On appeal, Appellant takes aim at four aspects of the district court's assessment of the reasonableness of Appellee's denial of "any occupation" long term disability benefits, namely, that the district court erred: (1) in concluding that the decisionmaking process was reasoned and principled, and that substantial evidence supported the denial of benefits; (2) in concluding that the Plan was not required independently to obtain evidence of Appellant's vocational capacity to support the Plan's determination that he could engage in a gainful occupation for which he was reasonably qualified by his education, training, and experience; (3) in concluding the Plan was not required to obtain an Independent Medical Examiner ("IME") evaluation to justify the denial of the claim; and (4) in assigning inadequate negative weight to the Social Security Administration's determination that Appellant was totally disabled and to Appellee's related conflict of interest.

10

The gravamen of these contentions, taken as a whole, is the assertion that the district court erred in failing to find Appellee's decision to deny benefits unreasonable because the court relied exclusively on material submitted by Appellant himself. Put differently, the argument is that the material submitted by Appellant established a prima facie case of total disability as a matter of law. Thus, according to Appellant, Appellee abused its discretion in denying the claim without its own independently-obtained evidence to meet the evidence provided by Appellant, and the district court erred when it failed so to conclude. We reject these contentions as we are not persuaded that the district court misapplied our precedents.

A.

This court has clearly held that when an ERISA plan discontinues an employee's benefits after totally disregarding some portion of a physician's opinion that is favorable to the employee's claim and seizing upon that portion which is adverse to the employee's claim, such decisionmaking is unreasonable. See Donovan v. Eaton Corp., 462 F.3d 321, 329 (4th Cir. 2006). Nevertheless, we have never required a plan to recite every fact found in doctors' reports and evaluations.

Here, the Plan provides for long-term disability benefits to employees who suffer from a "total disability." Under the Plan, "total disability" is defined in the following manner:

11

> Total disability, as it applies to this benefit, shall mean that you are prevented solely by an <u>illness</u> or <u>injury</u> from performing the regular and customary duties of your enjoyment. You do not have to be confined to your home, but must be under the regular and continuing care of a <u>physician</u>. Beginning 24 months after the disability first began, to be considered to be totally disabled, you must not be able to engage in any gainful occupation for which you are reasonably qualified by education, training or experience. You are not considered to be totally disabled if at any time you engage in your own or any other occupation for compensation or profit.

In light of this definition, it is evident to us (as it was to the district court) that the Plan fully considered the totality of evidence presented by the Appellant in connection with his "any occupation" disability claim. In a July 3, 2007 letter, Michele Ackerman – Manager of Employee Benefits for the Plan – addressed the Appellant's remand claim and dismissed his assertion that he was physically incapacitated by the loss of three finger tips on his right hand in 1988. The Plan dismissed this assertion because it represented "a new claim that was not the subject of or related to his prior claim for physical disability." J.A. 190-91. Moreover, Ms. Ackerman did not believe that Appellant provided a sufficient rationale for why this condition prevented him from "engaging in at least sedentary employment." J.A. 191. Then, focusing on the balance of Appellant's submission, which dealt primarily with Dr. Maiolo's assessments, Ms. Ackerman looked to the most recent of Dr. Maiolo's assessments. She found that, essentially, in his April

12

24, 2007 CRFC, Dr. Maiolo indicated that the Appellant was "capable of low stress jobs." Furthermore, Ms. Ackerman underscored that what is meant by "illness" under the Plan "means 'bodily sickness, disease or disorder, excluding mental /nervous disorders, except to the extent such mental/nervous disorders have a physical manifestation.'" And as such, there was nothing in the record to undermine Dr. Nobbee's July 26, 2005 assessment that the Appellant "had 'recovered well from his recent coronary artery event and physically is doing well.'"

The district court concluded that the record demonstrates that the Plan engaged in a "deliberate and principled reasoning process in analyzing [Appellant's] long-term disability claim." J.A. 320. It further concluded that the Plan neither ignored evidence supportive of Appellant's alleged total disability nor distorted statements made by any of the physicians. The court acknowledged that the Plan's first denial letter did not mention all of "Dr. Maiolo's answers on the Cardiac Residual Functional Questionnaire and/or the specific questions that prompted those answer," but that "the selected portions cited by [the Plan] do not mischaracterize or 'ignore the t[h]rust' of the questionnaire as a whole." J.A. 322.

Moreover, as found by the district court, even though Dr. Nobbee noted that the Appellant suffered from permanent disability, Dr. Nobbee qualified these statements by noting that

13

he was referring to the Appellant's disability vis-à-vis his job as a truck driver. J.A. 58, 71, 153. Ultimately, the district court specifically addressed those facts that both supported and undermined Appellant's arguments.

At bottom, it cannot plausibly be said that the district court failed in its duty to assess whether Appellee gave short shrift to any of the evidence presented by Appellant in support of his claim. The court did not err in concluding that Appellee did no such thing; its related conclusion that substantial evidence supports the adverse disability determination was sound.

B.

Appellant also argues that the district court erred when it concluded that the Plan was not required to obtain vocational evidence of his occupational skills prior to concluding that he could engage in a gainful occupation for which he was reasonably qualified by his education, training, and experience. We disagree.

Under this court's precedents, a plan is not required as a matter of law to obtain vocational or occupational expertise in its evaluation of an employee's claim. See LeFebre v. Westinghouse Elec. Corp., 747 F.2d 197, 206 (4th Cir. 1984), overruled by implication on other grounds by Black & Decker Disability Plan v. Nord, 538 U.S. 822 (2003); see also United

14

States Ass'n v. Social Sec. Admin., 423 F.3d 397, 404 (4th Cir. 2005). We agree with the district court that because Appellee reasonably concluded that Appellant failed to establish a prima facie case of long term disability, based on "reliable evidence" contained in Appellant's very submission, see Berry v. Ciba-Geigy Corp., 761 F.2d 1003, 1008 (4th Cir. 1985), the Plan was free to exercise its discretion not to procure such evidence. Obviously, Appellant, on whom the plan document indisputably placed the burden to establish disability, could have elected to bolster his claim by obtaining vocational evidence as a part of his submission to the Plan. But here, there was nothing requiring a rebuttal showing. See Elliott v. Sara Lee Corp., 190 F.3d 601, 608 (4th Cir. 1999) (holding that Sara Lee did not need to secure a vocational consultant to determine if Elliot could perform any jobs). We discern no error.

C.

Appellant next contends that the district court erred when it concluded that the Plan was not required to obtain an Independent Medical Examiner ("IME") evaluation. Again, we disagree, because as discussed above, a plan administrator has no duty to develop evidence that a claimant is not disabled prior to denying benefits. See LeFebre, 747 F.2d at 206. Here, the plain language of the Plan Document states that "[t]he plan reserves the right to have [a claimant] examined by a medical

15

specialist(s) at any time after [the claimant] file[s] for disability benefits." J.A. 41 (emphasis and alterations added). Nothing in the language of the Plan document or in our precedents required Appellee to seek out IME evidence as a condition to its denial of Appellant's claim.

D.

Finally, Appellant contends that the district court erred by not giving appropriate weight to the award of Social Security disability benefits and to the Plan's related conflict of interest. We disagree.

We have held that barring proof that the disability standards for social security and the plan in question are analogous, we would not consider an SSA award in an ERISA case. See Smith v. Continental Cas. Co., 369 F.3d 412, 420 (4th Cir. 2004) (noting that "what qualifies as a disability for social security disability purposes does not necessarily qualify as a disability for purposes of an ERISA benefit plan"); Elliott, 190 F.3d at 607 (refusing to consider an SSA disability award where such an award was not binding on the plan and "[t]here is no indication that the definition of 'total disability' under the Plan in any way mirrors the relevant definition under the regulations of the SSA".). Here, there are no indicia that the Plan Document's definition of "total disability" mirrors the

16

relevant definition in the SSA's regulations. In fact, the Plan specifically noted the difference. In its February 8, 2008 denial letter, it explained:

> [T]he Plan is not governed by or subject to this determination since the Social Security Administration employs standards and guidelines that differ from the terms of the Plan. While this determination is not binding, this information has been considered. I find this determination unpersuasive in light of the rest of the record.

J.A. 201. The district court concluded that the Plan's analysis and resolution regarding the SSA award was reasonable in light of the SSA's determination that was not informed by relevant information that only later became available.

In light of these facts, this court must consider whether the Plan's treatment of the SSA determination, i.e., requiring Appellant to apply for SSA disability income benefits as a condition to receipt of benefits under the Plan, and then concluding that he is not disabled, as potential evidence of procedural unreasonableness and unfairness. See Glenn, 128 S. Ct. at 2352. In Glenn, the court of appeals had "found questionable the fact that MetLife had encouraged Glenn to argue to the Social Security Administration that she could do no work, received the bulk of the benefits of her success in doing so . . . and then ignored the agency's finding in concluding that Glenn could in fact do sedentary work." Id. These circumstances not only suggested procedural unreasonableness; they also justified

17

the court in according significant weight to the conflict given that MetLife's apparently inconsistent positions were financially advantageous. Id. Notably, however, the court had observed that MetLife had preferenced a certain medical report that favored denying benefits over other reports that suggested a contrary conclusion, id., and indeed, although MetLife had retained vocational and medical experts, it had "failed to provide [its witnesses] with all of the relevant evidence." Id. (emphasis added). These facts, under the "totality of the circumstances test" adopted by the majority in Glenn, see id. at 2357 (Scalia, J., dissenting), clearly prompted the Glenn majority to affirm on the merits the court of appeals' ultimate conclusion that MetLife's denial of benefits was an abuse of discretion.

The circumstances in the case at bar are easily distinguished from those presented in Glenn. Considering the Plan's conflict of interest in light of the totality of the eight Booth factors, it simply cannot be said that the Plan acted unreasonably or unfairly. See Booth, 201 F.3d at 342-43. Here, as we have noted, and unlike in Glenn, 128 S. Ct. at 2352, the Plan acted reasonably in its holistic review of Appellant's submission and in finding reliable evidence therein supporting its denial, and, as we have said, the Plan properly exercised its discretion not to procure vocational and independent medical

evidence. The record here leaves solely the conflict of interest as an indicium of unreasonableness. Accordingly, this factor, in isolation, is insufficient for this court to conclude that the trial court erred in its determination.

V.

Having had the benefit of full briefing and oral argument, and having fully considered Appellant's assignments of error, we affirm for the reasons stated by the district court. Piepenhagen v. Old Dominion Freight Line, Inc. Employee Benefit Plan, 640 F.Supp.2d 778 (W.D.Va. 2009).

AFFIRMED